UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *Petitioner,* | : | |
| | : | 25 Misc. 559 |
| - v - | : | |
| THE CITY OF NEW YORK, | : | |
| *Respondent.* | : | |
------------------------------------------------------------------ x

# PETITION OF THE UNITED STATES OF AMERICA FOR SUMMARY ENFORCEMENT OF HSI ADMINISTRATIVE SUBPOENA NO. HSI-2026-001193-001

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States of America
86 Chambers Street, Third Floor
New York, New York 10007
Tel:   (212) 637-0179
*Attorney for Petitioner*

REBECCA S. TINIO
*Assistant United States Attorney*
 – Of Counsel –

**TABLE OF CONTENTS**

JURISDICTION AND VENUE ................................................................................................2

BACKGROUIND ....................................................................................................................2

THE HSI SUBPOENA ............................................................................................................4

THE HSI SUBPOENA MAY BE SUMMARILY ENFORCED ....................................................6

    1. The HSI Subpoena Was Issued in Aid of a Legitimate Investigatory Purpose, and Is Relevant to that Purpose ................................................................................................ 7

    2. The HSI Subpoena Satisfies the Remaining Factors ...............................................9

    3. Compliance with the HSI Subpoena Would not Be Unnecessarily Burdensome..................9

CONCLUSION ....................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
  567 U.S. 387 (2012).................................................................................................. 2

*E.E.O.C. v. United Parcel Serv., Inc.*,
  587 F.3d 136 (2d Cir. 2009)...................................................................................... 7

*EEOC v. AAM Holding Corp.*,
  736 F. Supp. 3d 186 (S.D.N.Y. 2024)................................................................. 9, 10

*FTC v. Texaco, Inc.*,
  555 F.2d 862 (D.C. Cir. 1977).................................................................................. 9

*In re McVane*,
  44 F.3d 1127 (2d Cir. 1995)............................................................................ 7, 9, 10

*McLane Co., Inc. v. EEOC*,
  581 U.S. 72 (2017).............................................................................................. 7, 10

*NLRB v. Am. Med. Response, Inc.*,
  438 F.3d 188 (2d Cir. 2006)............................................................................... 7, 10

*Peters v. United States*,
  853 F.2d 692 (9th Cir. 1988) .................................................................................... 8

*United States v. Clarke*,
  573 U.S. 248 (2014).................................................................................................. 8

*United States v. Minker*,
  350 U.S. 179 (1956).................................................................................................. 8

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950)............................................................................................. 7, 8

*United States v. Powell*,
  379 U.S. 48 (1964).................................................................................................... 8

**Statutes and Regulations**

8 U.S.C. § 1101................................................................................................................ 2

8 U.S.C. § 1225(d)(4) ...................................................................................................... 1

8 U.S.C. § 1225(d)(4)(A) .................................................................................................... 2, 3, 8

8 U.S.C. § 1225(d)(4)(B) .................................................................................................... 2, 3, 4

8 U.S.C. § 1324a ...................................................................................................................... 2

8 U.S.C. § 1357 .................................................................................................................... 2, 3

8 U.S.C. § 1182 ........................................................................................................................ 2

8 U.S.C. §§ 1324-26 ................................................................................................................ 9

28 U.S.C. § 1391(b) ................................................................................................................. 2

28 U.S.C. § 1331 ...................................................................................................................... 2

8 C.F.R. § 287.4(c) ................................................................................................................... 1

8 C.F.R. § 287.4 ..................................................................................................................... 10

8 C.F.R. § 287.4(b)(1) ............................................................................................................ 10

Pursuant to 8 U.S.C. § 1225(d)(4) and 8 C.F.R. § 287.4(c), petitioner the United States of America (the "Government") respectfully petitions this Court for an Order directing respondent the City of New York ("the City") to comply with U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") Administrative Subpoena No. HSI-2026-001193-001 (the "HSI Subpoena"), which was issued to the City by the Government on October 6, 2025.[1]  As set forth below, the City has not petitioned to modify or set aside the HSI Subpoena; nonetheless, it has improperly refused to provide any responsive documents.

The HSI Subpoena was issued in furtherance of an investigation into possible violations of Title 8 of the United States Code.  It seeks documents relating to whether the City is presently housing male individuals in the shelter located at 825 East 141st Street, Bronx, NY (the "Facility"), who (1) are not citizens or nationals of the United States, and (2) retain criminal histories, irrespective of disposition, relative to the following violations of law in any U.S. jurisdiction: murder, manslaughter, rape, robbery, assault, grand larceny, burglary, or assault of a law enforcement officer.  This information will aid the Government in evaluating whether individuals who are present unlawfully in the United States, and who also retain criminal histories consistent with the description above, are being housed in the Facility.  Thus, the information sought in the HSI Subpoena may help the Government to assess the existence of ongoing violations of, among other things, Title 8, Sections 1324, 1325, and 1326.

The HSI Subpoena is enforceable because it was issued in aid of a legitimate investigatory purpose and is relevant to that purpose, the information sought is not already in HSI's possession, and HSI followed the required administrative steps in issuing the Subpoena.

---

[1] A copy of the HSI Subpoena is attached as Exhibit A to the Declaration of George Ioannidis ("Ioannidis Decl.") in support of this Petition.

*See* 8 U.S.C. § 1225(d)(4)(A), (B). The United States therefore respectfully requests that the Court enforce the HSI Subpoena against the City.

In support of this Petition to enforce the HSI Subpoena, the Government states the following:

## JURISDICTION AND VENUE

This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1331, 1345, and 8 U.S.C. § 1225(d)(4)(B), which allows a subpoena enforcement action to be filed in "[a]ny United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer."

Venue is proper under 8 U.S.C. § 1225(d)(4)(B) because HSI is conducting its investigation within this jurisdiction. *See* 28 U.S.C. § 1391(b).

## BACKGROUIND

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Congress has exercised its authority to make laws governing the entry, presence, status, and removal of aliens within the United States by enacting various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99-603, 100 Stat. 3359, codified at 8 U.S.C. § 1324a *et seq.*, and other laws regulating immigration. These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231, 1357.

ICE HSI is the largest investigative branch of the U.S. Department of Homeland Security ("DHS") and is charged with the enforcement of more than 400 federal statutes. Ioannidis Decl. ¶ 3. HSI employs Special Agents who, among other things, are immigration officers under 8

U.S.C. § 1357 and are charged with investigating violations of federal immigration law, including criminal and civil investigations of individuals present unlawfully in the United States, those that smuggle and transport such individuals, and those that illegally facilitate the presence of such individuals in the United States. *Id.*

The President has issued several executive orders establishing new immigration enforcement policies for the federal government. For example, the President directed the Secretary of Homeland Security to ensure that "the primary mission of [HSI] is the enforcement of the provisions of the INA and other Federal laws related to the illegal entry and unlawful presence of aliens in the United States." *See* Executive Order 14159 § 4, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443 (Jan. 20, 2025); *see also, e.g.*, Executive Order 14165 § 2(d), "Securing Our Borders," 90 Fed. Reg. 8467 (Jan. 20, 2025). Since the issuance of these executive orders, HSI has been diligently implementing the President's policies, including civil immigration enforcement actions against aliens with criminal histories.

The Attorney General and "any immigration officer" may "require by subpoena . . . the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of [the INA] . . ." 8 U.S.C. § 1225(d)(4)(A). Furthermore, the immigration officer "may invoke the aid of any court of the United States" to enforce the subpoena. *Id.* Section 1225(d)(4) also specifies that "[a]ny United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued" under that authority, "issue an order requiring such persons to . . . produce books, papers, and documents if demanded." 8 U.S.C. § 1225(d)(4)(B). A "failure to obey such order of the court may be punished by the court as a contempt thereof." *Id.*

3

## THE HSI SUBPOENA

On October 6, 2025, George Ioannidis, Assistant Special Agent in Charge ("ASAC") at the New York City Field Office of ICE, HSI, served the HSI Subpoena on counsel for the City in furtherance of an investigation into possible violations of Title 8 of the United States Code, including whether the City is presently housing male individuals in the Facility who (1) are not citizens or nationals of the United States, and (2) retain criminal histories, irrespective of disposition, relative to the following violations of law in any U.S. jurisdiction: murder, manslaughter, rape, robbery, assault, grand larceny, burglary, or assault of a law enforcement officer. *See* Ioannidis Decl. ¶¶ 1, 4. The HSI Subpoena requests "[r]ecords sufficient to identify the Full Name and Date of Birth of all males currently lodged or residing at [the Facility], and all other records in the possession, custody, or control of the Facility that contain information that would assist in identifying the Full Name and Date of Birth of all males currently lodged or residing at the Facility." *Id.* & Ex. A. The information sought in the HSI Subpoena will aid the Government in evaluating whether individuals who are present unlawfully in the United States, and who also retain criminal histories consistent with the description above, are being housed in the Facility, which may help to prove violations of, among other things, Title 8, Sections 1324, 1325, and 1326. *Id.* ¶ 5. Furthermore, HSI is not already in possession of this information. *Id.*

On October 10, 2025, the City, through counsel, objected to the HSI Subpoena. *Id.* ¶ 6 & Ex. B. As of today, the City has not complied with the HSI Subpoena. *Id.* ¶ 7.

HSI has been attempting to work with the City for more than three months regarding the Government's above-described investigation. *Id.* ¶ 8. On August 22, 2025, ASAC Ioannidis served HSI Administrative Subpoena No. HSI-2025-078845-001 (the "Original Subpoena") on counsel for the City, in furtherance of the investigation. *Id.* The Original Subpoena asked the City to provide "[t]he Full Name and Date of Birth of all males currently lodged or residing at [the

Facility] who are not citizens or nationals of the United States and retain criminal histories, irrespective of disposition, relative to the following violations of law in any U.S. jurisdiction:

    a. Murder;

    b. Manslaughter;

    c. Rape;

    d. Robbery;

    e. Assault;

    f. Grand Larceny;

    g. Burglary;

    h. Assault of a Law Enforcement Officer"

*Id.* On August 29, 2025, the City, through counsel, objected to the Original Subpoena, indicating that "[t]he City remains willing to respond to appropriate subpoenas and requests, as it has done in the past months, but cannot honor this Subpoena absent more." *Id.* ¶ 9.

After conferring with counsel for the City, on September 5, 2025, counsel for the Government sent correspondence to the City amending the Original Subpoena "to clarify and narrow" its scope. *Id.* ¶ 10. The amended request, as described in the September 5 correspondence, sought "the following records (including books, papers, electronic records, or other documents) in the City's possession, custody and control:

1. Records sufficient to identify the Full Name and Date of Birth of all males currently lodged or residing at [the Facility] who are not citizens or nationals of the United States.

2. Records sufficient to reflect the criminal histories, irrespective of disposition, of all males currently lodged or residing at [the Facility], regarding the following violations of law in any U.S. jurisdiction:

    a. Murder;

    b. Manslaughter;

   c. Rape;

   d. Robbery;

   e. Assault;

   f. Grand Larceny;

   g. Burglary;

   h. Assault of a Law Enforcement Officer"

*Id.* On September 19, 2025, the City, through counsel, again objected to this modification of the Original Subpoena, indicating that "[w]hile the City will cooperate with properly issued subpoenas and will honor judicially authorized legal process, the City is unable to comply with your present request." *Id.* ¶ 11. As of today, the City has provided no information in response to the Original Subpoena, the Original Subpoena as amended on September 5, 2025, or the currently operative HSI Subpoena. *Id.* ¶ 12.

## **THE HSI SUBPOENA MAY BE SUMMARILY ENFORCED**

  The Supreme Court has held that an administrative subpoena "is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also McLane Co., Inc. v. EEOC*, 581 U.S. 72, 77 (2017) (holding that if the information sought by an administrative subpoena is relevant to the agency's inquiry, "the district court should enforce the subpoena" unless the subpoena "is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome"). The Second Circuit has restated these requirements as follows: "To obtain enforcement of an administrative subpoena, an agency must show only [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the agency's possession, and [4] that the administrative steps required … have been followed." *E.E.O.C. v.*

*United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009) (citation and internal quotation marks omitted); *see also, e.g.*, *NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006). The district court's "role in a proceeding to enforce an administrative subpoena is extremely limited." *NLRB*, 438 F.3d at 192; *see also In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995). "A subpoena that satisfies these criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable, … or that compliance would be '*unnecessarily* burdensome.'" *NLRB*, 438 F.3d at 192-93 (emphasis in the original) (citation omitted) omitted).; *see McLane Co.*, 581 U.S. at 77.

The HSI Subpoena satisfies these criteria, and thus may be summarily enforced.

**1. The HSI Subpoena Was Issued in Aid of a Legitimate Investigatory Purpose, and Is Relevant to that Purpose**

The HSI Subpoena was issued in aid of a legitimate investigatory purpose, and is relevant to that purpose. First, HSI had the authority to issue the HSI Subpoena. The Supreme Court has recognized that the administrative subpoena authority of a federal agency is broad because the purpose of an administrative subpoena is not adjudicative, but is instead a power "to inquire." *United States v. Clarke*, 573 U.S. 248, 254 (2014); *see United States v. Powell*, 379 U.S. 48, 57 (1964) (discussion other agencies' administrative subpoena powers as a "power of inquisition"). Indeed, the Supreme Court has analogized agencies' administrative subpoena powers to the Grand Jury, "which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43.

The INA broadly grants the Attorney General and any immigration officer the "power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter,

7

reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service . . . ." 8 U.S.C. § 1225(d)(4)(A). The Supreme Court has construed that provision, as it appeared in a predecessor statute, as providing ICE with the authority to demand documents not only relating to aliens entering the United States, but on matters "encompass[ing] the full range of subjects covered by the [Immigration and Nationality Act of 1952]." *United States v. Minker*, 350 U.S. 179, 185-86 (1956). The subpoena power encompasses both civil and criminal proceedings since both are part of the INA. *See Peters v. United States*, 853 F.2d 692, 695 (9th Cir. 1988).

Here, HSI is investigating potential violations of immigration laws and the HSI Subpoena was issued in support of that investigation. Specifically, HSI is investigating whether the City is housing male individuals in the Facility who are not citizens or nationals of the United States, and who retain criminal histories relative to certain categories of serious criminal violations. Ioannidis Decl. ¶¶ 4-5; 8 U.S.C. §§ 1324-26. Sections 1325 and 1326 impose penalties on individuals who have unlawfully entered the United States; Section 1324 imposes penalties on persons who, among other things, harbor individuals who have unlawfully entered the United States. This type of enforcement and investigative activity, which here is focusing additionally on individuals with serious criminal histories, falls squarely within the broad scope of inquiry authorized in § 1225(d)(4)(A). And the information sought by the HSI Subpoena, designed to enable HSI to investigate the immigration status and criminal histories of male individuals being housed in the Facility without imposing undue burden on the City to conduct those inquiries itself[2], is directly relevant to this activity. Relevance is broadly construed when enforcing

---

[2] As explained above, the Original Subpoena served on the City, as revised after discussions with the City's counsel in September 2025, would have required the City itself to ascertain which males lodged or residing at the Facility are not citizens or nationals of the United States, and to

8

administrative subpoenas. *See FTC v. Texaco, Inc.*, 555 F.2d 862, 871-76 (D.C. Cir. 1977); *see also, e.g.*, *McVane*, 44 F.3d at 1134, 1135 ("We defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong.") (citation and internal quotation marks omitted); *EEOC v. AAM Holding Corp.*, 736 F. Supp. 3d 186, 190 (S.D.N.Y. 2024) ("[s]howing relevancy in this context is a low bar, and courts have given the term 'relevant' a 'generous construction'").

**2. The HSI Subpoena Satisfies the Remaining Factors**

The HSI Subpoena satisfies the remaining factors pertaining to an enforceable administrative subpoena. HSI is not already in possession of the information sought by the HSI Subpoena, *see* Ioannidis Decl. ¶ 5, and all of the required administrative steps were followed in issuing the Subpoena. *See* 8 C.F.R. § 287.4. The Subpoena was issued in aid of a criminal or civil investigation by a qualified HSI Special Agent in a supervisory position. *Id.* § 287.4(a)(1); Ioannidis Decl. ¶ 4. The Subpoena was issued on the proper form, commanded the City to produce specified records, and was properly served on the City's counsel. 8 C.F.R. §§ 287.4(b)(1), (c); Ioannidis Decl. ¶ 4 & Ex. A; *see also McVane*, 44 F.3d at 1136 ("An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met.").

**3. Compliance with the HSI Subpoena Would not Be Unnecessarily Burdensome**

Finally, compliance with the HSI Subpoena would not be unnecessarily burdensome. *See, e.g.*, *AAM Holding Corp.*, 736 F. Supp. 3d at 191. "[T]he decision whether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty [the recipient] will face in producing them." *Id.* (quoting *McLane Co.*, 581 U.S. at 81) (internal quotation

---

produce records reflecting the criminal histories of the males lodged or residing at the Facility with respect to enumerated serious offenses. *See* Ioannidis Decl. ¶ 10.

marks omitted); *see also McVane*, 44 F.3d at 1135 ("The burden of demonstrating that an administrative subpoena is unreasonable falls on the individual to whom it is directed"). The HSI Subpoena asks the City only to produce records sufficient to identify the full name and date of birth of all males lodged or residing at the Facility, and any other records within (or within the control of) the Facility that would assist HSI in identifying the full name and date of birth of those male individuals. Ioannidis Decl. ¶ 4 & Ex. A. The HSI Subpoena does not seek production of any records outside the Facility (or outside the Facility's control). The HSI Subpoena also shifts to HSI the burden of using this basic identifying information to determine which male individuals may not be citizens or nationals of the United States, and also have criminal histories relative to certain enumerated serious offenses. Thus, compliance would not "'threaten[] to unduly disrupt or seriously hinder normal operations.'" *AAM Holding Corp.*, 736 F. Supp. 3d at 192 (quoting *NLRB*, 438 F.3d at 193 n.4).[3]

## **CONCLUSION**

For the above reasons, the United States respectfully requests that the Court grant its petition.

---

[3] Nor does the HSI Subpoena unreasonably invade any individual's privacy. *See AAM Holding Corp.*, 736 F. Supp. 3d at 192 (rejecting an "abstract and attenuated" privacy objection to enforcement of an administrative subpoena seeking information regarding the employees of a corporation, including demographic information, positions, employment dates, and contact information).

Dated: New York, New York
December 9, 2025

JAY CLAYTON<br>
United States Attorney

By:    */s/ Rebecca S. Tinio*
    REBECCA S. TINIO
    Assistant United States Attorney
    86 Chambers Street, 3rd Floor
    New York, NY 10007
    Tel.: (212) 637-0179

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,088 words.