**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>*Petitioner,*<br><br>- v -<br><br>THE CITY OF NEW YORK,<br><br>*Respondent.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | 25 Misc. 559 (LAK) |

------------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION FOR SUMMARY ENFORCEMENT OF HSI ADMINISTRATIVE SUBPOENA**

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States of America
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2695
*Attorney for Petitioner*

JEFFREY OESTERICHER
*Assistant United States Attorney*
– Of Counsel –

Petitioner the United States of America (the "Government") respectfully submits this reply memorandum of law in further support of its petition for an Order directing respondent the City of New York (the "City") to comply with U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") Administrative Subpoena No. HSI-2026-001193-001 (the "HSI Subpoena"). As set forth below, the HSI Subpoena was issued in connection with a legitimate law enforcement investigation, the information requested by the Subpoena is relevant to the purpose of the investigation and not already in HSI's possession, and the required administrative steps for issuing the HSI Subpoena have been followed. Furthermore, the City has not met its burden of showing that the HSI Subpoena is unreasonable or that compliance would be unnecessarily burdensome. Accordingly, the Court should enforce the HSI Subpoena.

## ARGUMENT

In its opposition papers, the City attempts to flip the script by incorrectly suggesting that the Government faces a substantial burden of proof in seeking to enforce the HSI Subpoena which it has failed to meet. As demonstrated below, the City's legal and factual arguments are without merit.

### A. The City Misstates the Legal Standard for Enforcement of HSI's Administrative Subpoena

The City argues first that the HSI Subpoena should not be enforced because the Government has not made a specific showing that "any particular resident [of the Bruckner Shelter operated by the City located at 825 East 141st Street, Bronx, NY (the "Facility")] has entered the United States illegally or committed a criminal or civil offense of any kind." *See* Opposition of the City of New York to Petition of the United States of America for Summary Enforcement of HSI Administrative Subpoena No. HSI-2026-001193-001 (ECF No. 15) ("City Opp.") at 1; *see also id*. at 14 ("The Petition is devoid of any suggestion that any particular resident of the Bruckner

Shelter has entered the United States illegally or committed a criminal or civil offense of any kind."). The City also faults the Government for not including in the HSI Subpoena "a description of residents about whom the government has even generalized concerns." *Id*. at 1; *see also id*. at 14 (same). According to the City, the Government must "provide a particularized justification of the relevance of the information sought to a particularized law enforcement investigation." *Id*. at 16; *see also id*. at 17 (same). However, that bespoke burden of proof is simply not the law; the governing legal standard does not require the Government to make such a detailed proffer of evidence to enforce an administrative subpoena, like the HSI Subpoena.

The law is settled that an administrative agency "'has a power of inquisition' akin to that of a grand jury, which it may exercise 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43, 70 S. Ct. 357, 364 (1950)). "To obtain enforcement of an administrative subpoena, an agency must show only [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within [the agency's] possession, and [4] that the administrative steps required . . . have been followed." *E.E.O.C. v. United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009) (citation and internal quotation marks omitted); *see also In re McVane*, 44 F.3d at 1135 (same). "A subpoena that satisfies these criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable, or issued in bad faith or for other improper purposes, or that compliance would be *unnecessarily* burdensome." *NLRB v. American Medical Response, Inc.*, 438 F.3d 188, 192-93 (2d Cir. 2006) (emphasis in the original) (internal quotation marks and citation omitted); *see also In re McVane*, 44 F.3d at 1135 ("It is possible . . . that an investigation into corporate matters 'may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power.'") (quoting *Morton Salt*, 338 U.S. at 652, 70 S. Ct. at 369).

The burden of demonstrating that an administrative subpoena is unreasonable falls on the individual or entity to whom it is directed. *In re McVane*, 44 F.3d at 1135. In applying the unreasonableness exception, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Morton Salt*, 338 U.S. at 652, 70 S. Ct. at 369; *see also U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 471 (2d Cir. 1996) (applying a similar test).

The district court's role in a proceeding to enforce an administrative subpoena "is 'extremely limited.'" *In re McVane*, 44 F.3d at 1135 (quoting *NLRB v. CCC Assoc., Inc.*, 306 F.2d 534, 538 (2d Cir. 1962). The court is required to "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *In re McVane*, 44 F.3d at 1135 (internal quotation marks and citation omitted); *see also id.* at 1136 ("We have interpreted relevance broadly.") (citing cases).

Applying this very deferential standard, the HSI Subpoena should be enforced. The Government has submitted two declarations from the Assistant Special Agent in Charge ("ASAC") of HSI's New York City Field Office attesting that HSI is conducting a legitimate investigation; the records requested in the HSI Subpoena are relevant to the investigation; the information sought is not already within HSI's possession; and the required administrative steps for issuing the HSI Subpoena have been followed. *See* Declaration of George Ioannidis, dated December 8, 2025 (ECF No. 3) ("Ioannidis Decl."); Supplemental Declaration of George Ioannidis, dated February 13, 2026 ("Suppl. Ioannidis Decl."). Nothing more is required. *See, e.g.*, *Construction Products Research*, 73 F.3d at 472 (enforcing administrative subpoena where the information sought was "'not plainly incompetent or irrelevant to any lawful purpose' of the NRC 'in the discharge of [its] duties'") (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 63 S. Ct 339, 343 (1943)).

Furthermore, even if, as the City (erroneously) contends, the Government must provide specific investigative details establishing the relevancy of the information requested in the HSI

Subpoena, it has done so here. The Supplemental Declaration of ASAC Ioannidis explains that HSI is aware that a significant number of the individuals residing in the Facility do not have lawful status in the United States. Suppl. Ioannidis Decl. ¶ 6. The Facility is a migrant shelter for male immigrants who entered the country on or after March 15, 2022, and have a fear of returning to their home country. *Id*. Based on the history of migration into this country since March 15, 2022, it is likely that many of the Facility's residents are not citizens or nationals of the United States. *Id*. Moreover, HSI is specifically aware that approximately 100 individuals are receiving immigration mail at the Facility, and HSI has separately verified that at least an additional twenty individuals who list the Facility as their residence entered the country illegally. *Id*.

HSI has also identified residents of the Facility who both entered the country illegally and have been charged with one of the eight serious criminal offenses that are the focus of HSI's investigation (the "Eight Serious Criminal Offenses"). *Id*. ¶¶ 3, 7. Specifically, ASAC Ioannidis avers that in the past 90 days, HSI has identified twelve individuals who list the Facility as their residence and been charged with one of the Eight Serious Criminal Offenses. *Id*. One of those individuals, in addition to having been charged with one of the Eight Serious Criminal Offenses, has both a federal felony illegal re-entry conviction and an active felony assault warrant. *Id*. Furthermore, in the past 90 days, HSI has identified six additional individuals who list the Facility as their residence and have been charged with criminal offenses other than the Eight Serious Criminal Offenses. *Id*. Accordingly, HSI has established why the information requested in the HSI Subpoena – namely the names and dates of birth of the residents of the Facility – is relevant to HSI's investigation. *See, e.g.*, *In re McVane*, 44 F.3d at 1135 (courts "defer to the agency's appraisal of relevancy, which must be accepted as long as it is not obviously wrong.") (internal quotation marks and citation omitted).[1]

---

[1] The City's offhand suggestion that a particularized justification of the relevance of the information sought to a particularized investigation is "necessary to sustain the government's burden of proper purpose for the Subpoena," City Opp. at 16, is completely unsupported and

The City's repeated mantra that the HSI Subpoena is an unlawful "fishing expedition," City Opp. at 14 (citing *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir 1994)); *see also id.* at 1, 2, 15, is unavailing. As a threshold matter, the legal principle upon which the City relies is not good law in this Circuit. As the Second Circuit made clear in addressing a similar "fishing expedition" argument, "[w]hile the Supreme Court early in th[e 20th] century strongly condemned fishing expeditions into private papers on the possibility that they may disclose evidence of crime, that position was decisively abandoned in *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 66 S. Ct. 494, 90 L. Ed. 614 (1946), and *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S. Ct. 357, 94 L. Ed. 401 (1950)." *In re McVane*, 44 F.3d at 1134 (internal quotation marks and citation omitted). Instead, the Supreme Court in *Morton Salt* adopted a deferential standard of review applicable to administrative subpoenas which recognizes that an agency may exercise its power of inquisition based "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." 338 U.S. at 642-43, 70 S. Ct. at 364; *see also In re McVane*, 44 F.3d at 1135 (discussing *Morton Salt*); *Construction Products Research*, 73 F.3d at 469-71 (discussing the history of the broadening of agency subpoena power); *U.S. v. Acker*, 325 F. Supp. 857, 863 (S.D.N.Y. 1971) ("The familiar anguish about 'fishing expeditions' has been met in this context with the observation that the Secretary [of Treasury] has been specifically licensed to fish by [26 U.S.C.] § 7602.") (internal quotation marks and citation omitted). As set forth *supra*, the HSI Subpoena clearly meets that standard.

---

mistaken. The only case the City cites for this proposition, *In re Admin. Subpoena* No. 25-1431-019, 800 F. Supp. 3d 229, 237 (D. Mass. 2025), did not articulate that standard and involved a situation where the government failed to submit "any affidavits or other evidence to show proper purpose," *id.* That is not the case here (where the Government has submitted two declarations establishing the bona fides of the law enforcement investigation). Furthermore, the particularized burden standard definitively is not the law in this Circuit. *See, e.g.*, *In re McVane*, 44 F.3d at 1136 ("An affidavit from a government official is sufficient to establish a prima facie showing" that the requested information is relevant to a permissible investigation).

The City's related argument that the Government failed to narrowly tailor the HSI Subpoena to the purpose of its investigation and instead is seeking "census-level information," City Opp. at 1-2, 14-15, 18, fares no better. Again, there is no requirement in the law that administrative subpoenas be narrowly tailored. To the contrary, the law only requires that the requested information be "relevant to the purpose" of the investigation. *NLRB*, 438 F.3d at 192-93; *see also Acker*, 325 F. Supp. at 863 (recognizing that administrative subpoena returns "will inevitably include large numbers of particular documents that are found by the person or agency making the demand to be irrelevant or immaterial"). Here, as explained in the Supplemental Ioannidis Declaration, the requested information is relevant to an ongoing investigation. This is especially true because the Government has reason to believe that a significant percentage of the residents of the Facility are not citizens or nationals of the United States and HSI has identified numerous residents who have criminal histories, including histories involving the Eight Serious Criminal Offenses. *See* Suppl. Ioannidis Decl. ¶¶ 6-7.[2]

Furthermore, as the City is aware, the purported overbreadth of the HSI Subpoena is a function of the City's refusal to honor a narrower subpoena. On August 22, 2025, the Government issued an administrative subpoena to the City requesting only the names and dates of birth of Facility residents who (a) were not citizens or nationals of the United States, and (b) retained criminal histories, irrespective of disposition, relative to the Eight Serious Criminal Offenses. *See* City Opp. at 11. The City objected to that subpoena on the ground, *inter alia*, that it "required the City to conduct an internal investigation and report its conclusions back to the government." *Id.*

[2] The City is also wrong to suggest (City Opp. at 18) that HSI has only limited subpoena authority under 8 U.S.C. § 1225(d)(4)(A). *See, e.g.*, *U.S. v. Multnomah County Dep't of Community Justice*, Case No. 6:25-cv-01784-MC, 2025 WL 3267361, at *3 (D. Or. Nov. 24, 2025) (statute provides HSI with a "broad grant of subpoena power over 'any matter which is material and relevant to' immigration enforcement") (quoting 8 U.S.C. § 1225(d)(4)(A)); *see also U.S. v. Minker*, 350 U.S. 179, 185 (1956) (agency's subpoena power "encompasses the full range of subjects covered by [§ 1225's predecessor statute]").

Accordingly, the Government issued the HSI Subpoena to obtain the information relevant to its investigation. Ioannidis Decl. ¶¶ 8-12.

**B. The City's Slippery Slope Argument Should Be Rejected**

Similarly, the City's slippery slope argument – that the HSI Subpoena "represents the tip of the spear by which the government will likely seek to obtain resident lists implicating the privacy interests of many thousands of the City's residents," City Opp. at 3; *see also id*. at 18-19 – is misplaced. First, the City's assertion is directly contrary to the sworn declarations submitted by the Government in this matter. The argument is also factually inconsistent with the narrow August 22, 2025 subpoena that the Government served on the City, with which the City refused to comply. And, perhaps most importantly, the City's speculation about future subpoenas is not relevant to the analysis of the enforceability of the HSI Subpoena. Each administrative subpoena must be evaluated on its own merits. In the event – as the City posits – the Government issues a subpoena "of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power," *Morton Salt*, 338 U.S. at 652, 70 S. Ct. at 369, the Court can issue an appropriate order in that context.

Likewise, the City's suggestion that the HSI Subpoena is a mere "pretext" and the initial step to "leverage the federal administrative subpoena power to circumvent and undermine the City's sanctuary city laws," City Opp. at 19, is both unsupported and contrary to the sworn declarations submitted by the Government in this case. Moreover, even indulging the City's accusation, the law is clear that even if the City could show that "one purpose underlying the subpoena[] is improper, enforcement of the subpoena[] is called for nevertheless so long as other proper purposes exist." *In re McVane*, 44 F.3d at 1139; *see also U.S. Immigration and Customs Enforcement v. Gomez,* 445 F. Supp. 3d 1213, 1215-16 (D. Co. 2020) (rejecting bad faith/improper purpose objection to ICE administrative subpoena and observing that "[t]o the extent these arguments raise political questions, they are beyond the constitutional reach of this Court")

*Federal Election Comm'n v. Automated Bus. Servs.*, 888 F. Supp. 539, 542 (S.D.N.Y. 1995) (rejecting bad faith argument because "respondents have failed to overcome the strong presumption of honesty and integrity to which the F.E.C. is entitled").

Finally, the City's attempt to invoke the privacy rights of the Facility's residents is unavailing. *See* City Opp. at 3, 18-19. Although courts have recognized individuals' right to privacy in connection with administrative subpoenas, "courts have nevertheless applied the lenient *Morton Salt* test to administrative subpoenas seeking personal records." *In re McVane*, 44 F.3d at 1137 (citing *United States v. Stuart*, 489 U.S. 353, 109 S. Ct. 1183 (1989) and *Resolution Trust Corp v. Walde*, 18 F.3d 943, 945-47 (D.C. Cir. 1994)); *see also U.S. Equal Employment Opportunity Comm'n v. AAM Holding Corp.*, 736 F. Supp. 3d 186, 192 (S.D.N.Y. 2024) (rejecting an "abstract and attenuated" privacy objection.[3] The HSI Subpoena satisfies that test.

Accordingly, the City has failed to meet its burden of showing that the HSI Subpoena is unreasonable.

[3] Concern for privacy rights may be heightened where, unlike here, the agency has sought records of third parties who are not targets of the agency's investigation. *In re McVane*, 44 F.3d at 1137.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court grant its petition.

Dated: New York, New York
February 12, 2026

JAY CLAYTON
United States Attorney

By: */s/ Jeffrey Oestericher*
JEFFREY OESTERICHER
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.: (212) 637-2695

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2,822 words.